1  MOWER, CARREON & DESAI, LLP
   Aashish Y. Desai (SBN 187394)
2  8001 Irvine Center Drive, Ste. 1450
   Irvine, CA 92618
3  Tel: (949) 474-3004
   Fax: (949) 474-9001
4  desai@mocalaw.com

5  NEWPORT TRIAL GROUP
   Scott J. Ferrell (SBN 202091)
6  610 Newport Center Drive, Ste. 700
   Newport Beach, CA 92660
7  Tel: (949) 717-3000
   Fax: (949) 717-3100

8  Attorneys for Plaintiff and the Class

9

10

11                 UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13

14  MICHAEL FLORES, individually, and      Case No.   **CV09-07872 DDP (FMOx)**
    on behalf of all others similarly situated,
15                                          CLASS ACTION
    and the general public,
16                                          **CLASS ACTION COMPLAINT**
                                            **FOR:**
17          Plaintiff,

18          vs.                             1. FRAUD;
19                                          2. BREACH OF EXPRESS
    EP2, INC., a Delaware corporation;         WARRANTY;
20  GENERAL NUTRITION                       3. VIOLATION OF CONSUMERS
    CORPORATION, dba GNC, a                    LEGAL REMEDIES ACT; and
21  Pennsylvania corporation; and DOES 1-   4. VIOLATION OF UNFAIR
22  10, Inclusive,                             COMPETITION LAWS

23          Defendants.                     **DEMAND FOR JURY TRIAL**

24

25

26

27

28

1

## INTRODUCTION

Plaintiff Michael Flores, by and through his attorneys, brings this hybrid nationwide and California class action on behalf of himself, all others similarly situated and the general public ("Plaintiffs") against Defendants EP2, Inc ("EP2") and General Nutrition Corporation, dba GNC ("GNC"), collectively referred to as "Defendants." The Court has original jurisdiction over Plaintiffs' and Class Members' claims under the Class Action Fairness Act of 2005. 28 U.S.C. § 1367.

## NATURE OF THE ACTION

EP2 markets various nutritional supplements known as Anabeutrol, Andritesten, Muclegrowth, Musclepump, and Musclegtropin (collectively the "Products"). Through an extensive and comprehensive nationwide marketing campaign, EP2 claims that the Products "unleash unprecedented muscle gain, strength increase and fat loss." It also claims that the Products are "proprietary" and "cannot be duplicated or knocked-off" because certain "newly discovered compounds" are protected through their patents. EP2 claims in its advertising that these exclusive health benefits result from its proprietary strains of "new novel bioactive ingredients and extracts" which have "never before [been] seen in sports supplements." These claims are false.

For example, EP2 claims that one of its strength-inducing supplements called "Anabeutrol" triggers and stimulates muscle cell growth, cell differentiation, and fat metabolism such that, among other things, it will add ***388% more muscle*** and cause a ***100% increase in strength*** for bodybuilders.

EP2's representations are false, misleading and reasonably likely to deceive the public. EP2's nationwide advertising campaign has been massive and comprehensive to convey these deceptive messages to consumers throughout the

United States.  Plaintiffs bring this lawsuit to enjoin these ongoing deceptions, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products. However, the driving force behind this class action is a desire to enjoin both Defendants from making -- and profiting -- from these false and obviously misleading advertising claims.

### THE PARTIES

1.    Plaintiff Michael Flores is a resident of California who has purchased and used one of EP2's Products during the Class Period.  Flores purchased this Product from GNC in reliance of these claims, and suffered injury in fact, and lost money as a result of the unfair competition described above.

2.    Defendant EP2 is the manufacturer of the Products, and is incorporated in the state of Delaware.  EP2 is registered to do business in the State of California, and does business in the State of California.

3.    Defendant GNC is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.  It claims to be the "largest global specialty retailer" of nutritional products.  GNC has thousands of stores throughout the United States, but over 264 in California alone.  GNC is registered to do business in the State of California, and does business in the State of California.

4.    Plaintiffs do not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by such fictitious names.  Plaintiffs are informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the class as alleged herein.  At all

3

1   times relevant to this Complaint, Defendants, including the fictitiously named

2   defendants, were the servants, employees, joint employers, integrated employers,

3   alter egos, successors-in-interest, subsidiaries, affiliated companies or corporations,

4   and joint venturers of the other Defendants, and were, as such, acting within the

5   course, scope and authority of each other Defendant.   Furthermore, each of the

6   Defendants, including the DOE defendants, acted in concert with, and with the

7   consent of, each of other Defendants, and that each of the Defendants, and that each

8   of the Defendants ratified or agreed to accept the benefit of the conduct of each of

9   the Defendants.   Plaintiff will set forth the true names and capacities of these

10   defendants when they have been ascertained, as may be necessary.

11

12                              **JURISDICTION AND VENUE**

13          5.      This   Court   has   original   jurisdiction   pursuant   to   28   U.S.C.

14   § 1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds

15   the sum or value of $5,000,000.00 and is a class action in which more than 100

16   members of the Class of Plaintiffs are citizens of states different from Defendants.

17   Further, greater than two-thirds of the Class members reside in states other than the

18   states in which Defendants are citizens.

19

20          6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that

21   many of the acts and transactions giving rise to this action occurred in this district

22   and because Defendants: (a) are authorized to conduct business in this district and

23   has intentionally availed itself of the laws and markets within this district though

24   the promotion, marketing, distribution and sale of its products in this district; (b) do

25   substantial business in this district; and (c) are subject to personal jurisdiction in

26   this district.   Plaintiff has filed concurrently herewith the declaration of venue

27   required by Civil Code Section 1780(d) for the Consumer Legal Remedies Act

28   claims. (Exhibit A.)

## FACTUAL ALLEGATIONS

7.     EP2 claims that its Products contain "botanically-active" ingredients that are subject to the "highest level of assay analysis and supported by toxicology, pre-clinical and clinical research."   Indeed, it goes on to claim that "every ingredient lot produced is tested for purity and potency ensuring consistent quality every time."   And that "EP2 employs a team of experienced researcher (sic) and scientific professionals to develop specialized protocols for the clinical evaluation of [all of their] products."   EP2 claims that its products "are the most exclusive and scientifically-evaluated products ever produced."   (Exhibit B.) The misleading and deceptive claims continue for all of their Products.

8.     For example, Anabeutrol is a supplement manufactured by Defendant EP2.  EP2 promotes and markets Anabeutrol as stimulating muscle cell growth, cell differentiation and fat metabolism through its "patent-pending ingredient TORABOLIC."   Specifically, EP2 claims that through its ingredients Anabeutrol "works to increase the power of [the purchaser's] oxidative muscle, forcing an increase in strength," and "triggers the genetic signal controlling fat breakdown, leading to smaller fat cells and an increase in fat burning."   In this connection, EP2 claims:

    (a)    Anabeutrol is "[s]cientifically proven to help [the purchaser] lose [fat] and build muscle;"

    (b)    Users of Anabeutrol will "[l]ose up to 6X [times] more fat in only 8 weeks;"

    (c)    Users of Anabeutrol will "[a]dd 388% more muscle;"

1      (d)    Users of Anabeutrol will realize a "100% increase in strength;"

2      and

3

4      (e)    Anabeutrol is "[c]linically proven."  (Exhibit C.)

5

6      9.    GNC markets Anabeutrol at its retail outlets in California, including at

7  its retail outlets in this County.  GNC affirmatively markets the false efficacy

8  claims of EP2's Products, including Anabeutrol.  In fact, and somewhat ironically,

9  GNC claims that it "sets the standard" in the nutritional supplement industry by

10  "demanding truth in labeling, ingredient safety and product potency" in all of the

11  products that it sells.  GNC goes on to claim that it "takes pride in [its] rigorous

12  approach to ensuring quality."  (Exhibit D.)

13

14      10.   Defendants' claims for Anabeutrol are false and misleading.

15  Specifically, contrary to Defendants' claims:

16

17      (a)    Anabeutrol does not cause the loss of fat that

18               Defendants claim;

19

20      (b)    Anabeutrol does not cause the increase in strength Defendants

21               claim; and

22

23      (c)    Anabeutrol's results have not been "clinically proven."

24

25      11.   EP2 at all times knew that Anabeutrol did not have the properties

26  claimed for it, and that it was defective as set forth above, but nevertheless

27  manufactured and marketed the product as set forth above.  Additionally, GNC is

28  aware of the nature of the claims made for the product and of the sheer falsity of

those claims, but it nevertheless promotes and sell the product to get high-margin, profitable sales.  Indeed, GNC has received complaints from consumers concerning Anabeutrol, and knew that the product was defective and did not function as advertised, but nevertheless continued to sell the product.

12.    Through its massive campaign, EP2 has conveyed one message: that it (and no other) maintains proprietary technology and products that enable consumers to add an enormous amount of muscle and decrease fat at alarming rates. Each person who has purchased the Products has been exposed to EP2's misleading advertising message multiple times.

13.    As a result of the misleading message, Plaintiffs have suffered significant injury and damage because they purchased a product based on false advertising and because the product has not worked as advertised.

14.    Defendants sell their Products for approximately $60.00 per package based on the preceding false claims.  As a result, Defendants have wrongfully made tens of millions of dollars in profits during the Class Period.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs bring this lawsuit on behalf of the proposed Class Members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  Specifically, Plaintiffs bring a nationwide Rule 23(b)(2) fraud class for injunctive relief; and a California Rule 23(b)(3) class for the remaining counts.  The proposed nationwide 23(b)(2) Class consists of:

///

**All persons who purchased in the United States Andritesten, Anabeutrol, Musclegrowth, Musclepump or Musclegtropin for personal use (the "Class").**

Plaintiffs request a subclass:  **All persons who purchased in California Andritesten, Anabeutrol, Musclegrowth, Musclepump or Musclegtropin for personal use at any time during the four years preceding the filing of this Complaint (the "Sub-Class").**

16.    Excluded from the Classes are governmental entities, Defendants, any entity in which defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.    **Numerosity:**  The proposed Class and Sub-Class comprises many tens of thousands of consumers throughout California and the United States, and, therefore, is so numerous that individual joinder of all its members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

///
///
///

8

18. **Common Questions of Law and Fact:**  There are questions of law and fact common to the Class and Sub-Class.  The common questions include:

      a.    Whether EP2's Products increases bodybuilding strength as Defendants claim;

      b.    Whether the Products causes fat loss as Defendants claim;

      c.    Whether Defendants' have adequate substantiation for their advertising claims prior to making them;

      d.    Whether Defendants falsely represented that their Products have characteristics, ingredients, uses, benefits, or quantities that it does not have;

      e.    Whether Defendants falsely represented that their Products are of a particular standard, quality, or grade;

      f.    Whether Defendants fraudulently induced customers to purchase their Products;

      g.    Whether Defendants labeled their Products in a way that is misleading, or likely to mislead, in a material respect;

      h.    Whether Defendants continued to sell their Products after knowing the preceding facts; and

///

i.    Whether the Class and Sub-Class members are entitled to declaratory and injunctive relief.

19.  **Typicality:** Plaintiff Flores' claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class have been similarly affected by Defendants' common course of conduct since they all were subject to the common advertising campaign and reasonably relied on Defendants' representations (and are presumed to have relied upon the material omissions) concerning their Products, and, in fact, purchased the product based on those representations.

20.  **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and Sub-Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and Sub-Class and have the financial resources to do so.

21.  **Superiority of Class Action:** Plaintiff and the members of the Class and Sub-Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impracticable. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all

class members' claims in a single forum.   The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.   Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

22.   Adjudication of individual Class Members' claims with respect to the Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

23.   Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from tens of thousands of consumers throughout the United States.   Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class, Sub-Class, and the general public will continue to be misled.

24.   Defendants have acted and refused to act on grounds generally applicable to the Class and Sub-Class, making appropriate final injunctive relief with respect to the Class and Sub-Class -- as a whole.

## COUNT ONE

### FRAUD

### (Nationwide for Injunctive Relief Only)

25.   Plaintiffs incorporate by this reference the proceeding allegations as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

26.     As alleged herein, Plaintiffs allege that Defendants have made at least the following uniform material misrepresentations to Plaintiffs and the Class:

a.     Defendant EP2 claims that it has developed "proprietary technology" that isolates, purifies and stabilizes pharmaceutically active components from biotonical sources for the sport nutrition market. The result, Defendant EP2 claims, is the discovery of "new, novel bioactive ingredients" and extracts "never before seen in sports supplements." These statements, in fact, are untrue;

b.     Defendant EP2 claims that it develops its performance supplements from "unique proprietary patent pending bioactive compounds with clinically researched results" when, in fact, Defendant possesses no such rights.

c.     Defendant EP2 claims that its products are the "most exclusive and scientifically evaluated products ever produced" when, in fact, this is not true;

d.     Defendant EP2 claims that its exclusive patent pending drug, Anabeutrol, "adds 388% more muscle" and results in "100% increase in strength" when, in fact, it does not; and

e.     Defendant GNC affirmatively advanced and promoted the uniform misrepresentations regarding Defendant EP2's products including the ethicacy claims about Anabeutrol with knowledge of the falsity of those claims.

12

27.     Defendants acted fraudulently and deceitfully with knowledge that Plaintiffs and the Class would rely on their actions and omissions.  Defendants made the material representations and/or concealed material facts to induce the Plaintiff and the Class to act in reliance on the misrepresentations and statements.

28.     In purchasing the Defendants' products, Plaintiff and the Class Members relied on the representations of the Defendants and had no reason to doubt or dispute those representations.   Indeed, due to the uniformity of the representations to all Class Members, Plaintiff and the Class at all times are presumed to have reasonably and justifiably relied both directly and indirectly on the actions and representations of the Defendants.

29.     As a direct and proximate result of Defendants' fraud, Plaintiff and the Class have suffered actual damages in an amount not presently known, but has acted on grounds applicable to all purchasers of all relevant products.

30.     Pursuant to Rule 23(b)(2), the Defendants have adopted a pattern and policy that is likely to be the same as to all Class Members.  The Defendants' misrepresentations on the bottle labels and through advertising are applicable to the Class Members who are all purchasers of the product.

31.     The driving force behind this class action is a desire to enjoin the Defendants' false and misleading advertising.  Given that it is unlikely that any named Plaintiff or Class Member will recover more than a few hundred dollars, the Court may presume that the Plaintiffs are primarily interested in injunctive relief. Furthermore, it is proper to apply the laws of 50 states to the nationwide Rule 23(b)(2) fraud class.  Although manageability concerns may preclude a nationwide

///

Rule 23(b)(3) fraud class, the Ninth Circuit has held that Rule 23(b)(2) does not require a determination of manageability.

32.     Moreover, there are fewer manageability issues when the Court, rather than the jury, applies differing legal standards.  The Court, rather than the jury, will apply the laws of the 50 states in this claim for injunctive relief.  Similarly, there is no requirement that common issues predominate for a Rule 23(b)(2) class.  It is sufficient if class members complain of a pattern or practice, as here, that is generally applicable to the class as a whole.

**COUNT TWO**

**BREACH OF EXPRESS WARRANTY**

**(Nationwide Damage Class)**

33.     Plaintiffs incorporate by this reference the proceeding allegations as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

34.     Plaintiffs, and each member of the Class, formed a contract with the Defendants at the time Plaintiffs and the other members of the class purchased the products.  The terms of that contact include the promises and affirmations of fact made by Defendants on its product labels and through its marketing campaign, as described above.   This product labeling and advertising constitutes express warranties, that became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other.

///

14

35.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class.

36.    Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the benefits described above.

37.    As the result of Defendants' breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the products they purchased.

**COUNT THREE**

**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**

**(California Sub-Class)**

38.    Plaintiffs incorporate by this reference the proceeding allegations as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

39.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "Act"). Plaintiffs are consumers as defined by California Civil Code § 1781(d). The products are goods within the meaning of the Act.

40.    Defendants violated and continue violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the Sub-Class which were intended to result in, and did result in, the sale of the products:

(5)   Representing that [the Products have] … characteristics … uses [or] benefits … which they do not have … .

* * *

(7)   Representing that the [the Products] are of a particular standard, quality or grade … if they are of another.

* * *

(9)   Advertising goods … with intent not to sell them as advertised.

* * *

(16)   Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

41.   Defendants violated the Act by representing through its advertisements the products as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

42.   Pursuant to § 1782 of the Act, Plaintiffs will notify the Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demand that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to act.

43.   Pursuant to California Civil Code § 1782(d), Plaintiffs and the Sub-Class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

44.   If Defendants have failed to rectify or do not agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty days of the written notice pursuant to § 1782 of the Act, Plaintiffs will seek to amend its claims to seek actual, punitive and statutory damages, as appropriate. Defendants' conduct is malicious, fraudulent and wanton and provides misleading information to the Plaintiffs, Sub-Class members and the general public.

## COUNT FOUR

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, 17500, et seq.

### (On Behalf Of The California Sub-Class)

45.   Plaintiffs incorporate by this reference the proceeding allegations as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

46.   California Business & Professions Code § 17200 prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

47.   California Business & Professions Code § 17200 also prohibits any "unlawful … business act or practice." Defendants have violated § 17200's probation against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code § 17200 et seq., 21 U.S.C. § 343, and the common law.

48. Plaintiffs and the Sub-Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

49. California Business & Professions Code § 17200 also prohibits any "unfair … business act or practice."

50. Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as to gravity of conduct that outweighs any alleged benefits attributable to such conduct.

51. As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers. Plaintiffs assert violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes of violations of the unfair prong of California Business & Professions Code § 17200 *et seq.*

52. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

53. Business & Professions Code § 17200 also prohibits any "fraudulent business act or practice."

///

54.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

55.     Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Sub-Class members.  Plaintiff has suffered injury in fact and has lost money (purchase price) as a result of the Defendants' unfair conduct.

56.     Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs to judgment and equitable relief against Defendants as set forth in the Prayer for Relief.

57.     Additionally, pursuant to Business & Professions Code § 17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

58.     Defendants have also committed acts of untrue and misleading advertising, as defined by Business & Professions Code § 17500, by engaging in the preceding acts and practices with the intent to induce members of the public to enter into contracts for the purchase of the Products.

59.     The acts of untrue and misleading advertising by the Defendants present a continuing threat to members of the public in that the Plaintiffs and Sub-Class members are unaware of the misrepresentations and necessarily and justifiably relied upon the representations made by the Defendants for the sale of their Products.  Plaintiffs and the other members of the Sub-Class and the general public have no other adequate remedy of law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff and members of the Class and Sub-Class request that the Court enter an order or judgment against Defendants as follows:

1.   Certification of a nationwide Rule 23(b)(2) fraud Class for injunctive relief; Certification of a nationwide Rule 23(b)(3) breach of warranty Class for damages;

2.   Certification of a California Rule 23(b)(3) for all other claims;

3.   Awarding Plaintiff and the proposed Sub-Class members damages;

4.   Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Sub-Class members;

5.   Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing the Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6.   For compensatory, general, statutory, exemplary, and any other damages legally available according to proof on certain causes of action;

7.   For both pre- and post-judgment interest at the maximum allowable rate on any amounts recovered;

8.  For litigation costs of the proceedings herein;

9.  Reasonable attorneys' fees and costs; and

10. Providing such further relief as may be just and proper.

Dated:  October 28, 2009

MOWER, CARREON & DESAI, LLP
AASHISH Y. DESAI

By: _____
        Aashish Y. Desai

Attorneys for Plaintiff and the Class

NEWPORT TRIAL GROUP
Scott J. Ferrell (SBN 202091)
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Telephone:      (949) 717-3000
Facsimile:      (949) 717-3100

## **DEMAND FOR JURY TRIAL**

Plaintiffs, the Class and the Sub-Class demand a trial by jury on all issues so triable.

Dated:  October 28, 2009

MOWER, CARREON & DESAI, LLP
AASHISH Y. DESAI

By: _____
    Aashish Y. Desai

Attorneys for Plaintiff and the Class


NEWPORT TRIAL GROUP
Scott J. Ferrell (SBN 202091)
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Telephone:        (949) 717-3000
Facsimile:        (949) 717-3100

# EXHIBIT A

1    I, Michael Flores, declare as follows:

2    1.    I am a Plaintiff in this action, and am a citizen of the State of California.  I have

3    personal knowledge of the facts herein and, if called as a witness, I could and would testify

4    competently thereto.

5

6    2.    The Complaint in this action, filed concurrently with this Declaration, is filed in the

7    proper place for trial under Civil Code Section 1780(d) in that Orange County is a county in which

8    Defendants are doing business.

9

10    I declare under penalty of perjury under the laws of the State of California that the foregoing is

11    true and correct, and that this Declaration was executed on October 26, 2009, at San Bernardino,

12    California.

13

14    _____
      Michael Flores

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

# EXHIBIT B

Case 2:09-cv-07872-DDP-PMO Document 1 Filed 10/28/09 Page 26 of 33



## WELCOME TO EP2ONLINE

We are Extreme Physical Performance (EP2) - a progressive, new sports supplement firm that delivers muscle-building formulas designed to help you make progressive advancements to your physique. At EP2, we understand that over-hyped claims and misleading messages have plagued our industry, leaving consumers scratching their heads wondering why the products they buy fail to deliver the results they expect. Well at EP2, our mission is to develop sport supplements that are deeply rooted in science, are clinically proven and university tested to be safe and extremely effective. We are unique! We are EP2!

The FREE RIDE SPECIAL: Buy two or more boxes of MUSCLEPUMP™ and get shipping and handling free! For a LIMITED TiME available on all other EP2 products (excluding samples, stacks and non supplement items)

Place an order (*promocode "freeshipping")





The STAN MCQUAY STRENGTH SPECIAL: Buy 3 boxes of MUSCLEGROWTH™ and get a 4th free! This constitutes a full 8 week cycle.

Place an order (*prom code "b3get4free")

The RAPID CUT SPECIAL: Buy 2 boxes of ANABEUTROL™ and get a 3rd one at 50% off

Place an order (*promo code "rapidspecial2b350")



## TESTED AND TRUE, EP2 DELIVERS RESULTS

EP2's botanically-active ingredients are subject to the highest level of assay analysis and supported by toxicology, pre-clinical and clinical research. The ingredients are manufactured in facilities which are ISO9001 certified and cGMP compliant (Current Good Manufacturing Practices). Each ingredient is tested for active markers and assays by validated HPLC techniques. Reference standards for active markers are validated by NMR (Nuclear Magnetic Resonance) and LC-MS (Liquid Chromatography-Mass Spectrometry). Every ingredient lot produced is tested for purity and potency ensuring consistent quality every time. [ read more ]

Case 2:09-cv-07872-DDP-FMO   Document 1   Filed 10/28/09   Page 27 of 33

**STRENGTH BEYOND MUSCLE**

Extreme Physical Performance

PRODUCTS | THE SCIENCE | EP2 PERFORMANCE LAB | EP2 COMMUNITY FORUM | EP2 BLOG | EP2 CREW | CONTACT | LOGIN/REGISTER

## THE SCIENCE

### EP2 - INNOVATION DRIVEN....SCIENCE VERIFIED!

Extreme Physical Performance (EP2) has joined forces with Indus Biotech, a progressive drug-discovery company. Our partnership has allowed us to develop proprietary technology that isolates, purifies, and stabilizes pharmaceutically-active components from botanical sources for the sport nutrition market. The result is the discovery of new novel bioactive ingredients and extracts never before seen in sports supplements. Our products cannot be duplicated or knocked-off because the extraction of these newly discovered compounds are highly regulated and protected through our patents.



EP2's botanically-active ingredients are subject to the highest level of assay analysis and supported by toxicology, pre-clinical and clinical research. The ingredients are manufactured in facilities which are ISO9001 certified and cGMP compliant (Current Good Manufacturing Practices). Each ingredient is tested for active markers and assays by validated HPLC techniques. Reference standards for active markers are validated by NMR (Nuclear Magnetic Resonance) and LC-MS (Liquid Chromatography-Mass Spectrometry). Every ingredient lot produced is tested for purity and potency ensuring consistent quality every time. EP2 utilizes the highest level of self-monitoring and ethical practices to ensure the products are safe and effective.

We at EP2 are dedicated to continually investigate the role of nutritional supplementation through clinical research with the goal of pushing the limits of human performance beyond normal and unlocking the secrets for serious muscle growth. For that reason, EP2 employs a team of experienced researcher and scientific professionals to develop specialized protocols for the clinical evaluation of our products. In a collaborative partnership with the Human Performance Laboratory at the University of Mary Hardin-Baylor, we are able to evaluate our products to support the claims we make. We go above and beyond basic supplement research practices by testing our actual product and not just a 'key ingredient' in a specific blend. EP2 invests significant amounts of money and resources in developing such models to ensure the development of genuine, novel products with real results!

Not only are we at the forefront of the industry by clinically researching our unique formulas, we at EP2 are dedicated to educating consumers about the scientific evidence as it relates to sports supplements. We take every effort to provide you the consumer information to help you understand our products and how to use them efficiently in order to reach your goals. Whether you're new to the gym or a seasoned veteran bodybuilder, EP2 is here to teach and help you make continual advancements to your physique.

EP2's goal is to become an industry leader specializing in the development of true revolutionary products from unique proprietary patent-pending bioactive compounds with clinically-researched results. We are confident that our products will change the way bodybuilders and serious strength-training athletes approach their performance goals. Our products are the most exclusive and scientifically-evaluated products ever produced. When used properly, they will produce significant gains in even the hardest gainer. EP2 is committed to delivering products that are deeply rooted in science for decades to come.

# EXHIBIT C

Case 2:09-cv-07872-DDP-FMO   Document 1   Filed 10/28/09   Page 29 of 33



**STRENGTH BEYOND MUSCLE**

Extreme Physical Performance

PRODUCTS | THE SCIENCE | EP2 PERFORMANCE LAB | EP2 COMMUNITY FORUM | EP2 BLOG | EP2 CREW | CONTACT | LOGIN/REGISTER

# EP2 PRODUCTS - ANABEUTROL™



Price: $69.90
60 Capsules (1 Month Supply)





**Store Locator**
USA
Canada

ANABEUTROL™

Select another product

ANABEUTROL™'s exclusive powerful proprietary, patent-pending ingredient TORABOLIC™, developed by the Botanical Drug Discovery company Indus Biotech, has lead to the creation of 'World's First Clinically Proven Anabolic Fat Lost Product' ever seen in the industry!

With each serving of ANABEUTROL™ 600mg of TORABOLIC™ (the proprietary bioactive compound from Extreme Physical Performance) is rapidly delivered via liquid capsule technology. The pharmaceutical-grade liquid capsule technology in ANABEUTROL™ ensures both rapid delivery of the bioactive ingredient and accurate dosing.

ANABEUTROL™ then triggers powerful receptor-activation in the muscles leading to a cascade of events that stimulate muscle cell growth, cell differentiation, and fat metabolism. First, ANABEUTROL™ works to activate PPAR (peroxisome proliferators-activated receptor) in the muscles, which are part of the nuclear receptor protein family. By stimulating these specific PPARs, ANABEUTROL™ works to increase the power of your oxidative muscle fibers, forcing an increase in strength. Second, because your PPAR receptors also function as your body's fatty acid sensors, ANABEUTROL™ triggers the genetic signal controlling fat breakdown, leading to smaller fat cells and an increase in fat burning.

What does this mean to you, the serious bodybuilder? Essentially, ANABEUTROL™ is targeting specific muscle energetic pathways and chemically activating growth receptors, which can unleash unprecedented muscle gain, strength increase and fat loss  Take full advantage of every workout and choose ANABEUTROL™. The powerful science behind Extreme Physical Performance and ANABEUTROL™ will put you one step closer to your best body today.

**Key Features**

- 'Best in Class' Supplement for burning fat while preserving lean muscle!
- Only product on the market that contains the exclusive ingredient TORABOLIC
- No hormonal side-effects
- Published Clinical Study (University of Mary Hardin-Baylor)
- Stackable with all EP2 products
- 1-Month Supply
- GREEN-MUSCLEBUILDING Supplement

**Benefits**

- Scientifically proven to help you lose ft and build muscle
- Lose up to 6X more fat in only 8 weeks
- Add 388% more muscle
- 100% increase in strength
- Clinically Proven

*Directions: On training days take 2 capsules 1-2 hours before training. On non-training days take 2 capsules in the morning.*

Graph: Anabeutrol's effect on strength and effect on fat loss
Journal of the International Society of Sports Nutrition

## EP2

Extreme Physical Performance

## STRENGTH BEYOND MUSCLE

PRODUCTS | THE SCIENCE | EP2 PERFORMANCE LAB | EP2 COMMUNITY FORUM | EP2 BLOG | EP2 CREW | CONTACT | LOGIN/REGISTER

## EP2 PRODUCTS



**ANDRITESTEN™**
Never before has an all-natural, drug-free, musclebuilding agent been developed that is clinically-proven to jack testosterone levels faster than new ANDRITESTEN™.





**ANABEUTROL™**
The pharmaceutical-grade liquid capsule technology in ANABEUTROL™ ensures both rapid delivery of the bioactive ingredient and accurate dosing.





**MUSCLEGROWTH™**
Two of bodybuilding's most powerful bio-active compounds together to forge one all-encompassing, muscle-hypertrophic event – MUSCLEGROWTH™. The combined science of new ANABEUTROL™ and ANDRITEST™.



**MUSCLEPUMP™**
With new MUSCLEPUMPTM, EP2 delivers the first scientific advancement to Nitric Oxide (NO) pump products in years. Only MUSCLEPUMP™ includes the next-generation NO compound HYPEROX™.



**MUSCLEGTROPIN™**
EP2's 'Best in Class' Muscle-Building Protein engineered as an 'Extreme Performance Anabolic Protein Formula'; contains synergistic ingredients necessary for creating an anabolic growth environment for building lean dense muscle and preventing muscle breakdown.

# EXHIBIT D



Sign up and Save 15% ▶   Email Sign Up   Community   Store Locator   Order Status   Help

| VITAMINS & SUPPLEMENTS | SPORTS NUTRITION | PROTEIN | DIET | CLEANSING & DIGESTION | SUPER FOODS & GREENS | HERBS | ENERGY & ENDURANCE | HEALTHY FOODS & SNACKS | BATH & BODY | EQUIPMENT & ACCESSORIES |

▸About GNC

−Media Center
−Press Releases
−Company Overview
−News Alerts
−Franchising Information:
  Start Your Own GNC
−Investor Relations
−Vendor Relations
−Community
  Affairs/Charitable Events
−Careers
−Store Locator
−The Live Well Poll
−GNC Medical Advisory
  Board

Search MediaRoom 

## We're committed to exceeding your expectations

GNC sets the standard in the nutritional supplement industry by demanding truth in labeling, ingredient safety and product potency, all while remaining on the cutting-edge of nutritional science. As our company has grown over the years, so has our commitment to Living Well. In fact, GNC is the world's largest company of its kind devoted exclusively to helping its customers improve the quality of their lives.

From scientific research and new product discovery to the manufacturing and packaging processes, GNC takes pride in our rigorous approach to ensuring quality. Our commitment to quality extends to our interactions with you in our stores and after you buy our products.

EmailPrint





**Key Contacts**

GNC Corporation

412-288-4600

more >

**Latest Features**

GNC Introduces Clinically Tested
ViraBLOC®
Oct 06, 2009

⊡ Subscribe to News Alerts

1-877-GNC-4700 | Contact GNC | Terms & Conditions | Privacy Statement | About GNC | Careers | Investor Relations | Affiliates

©1997-2007 General Nutrition Centers, Inc.

Sign up and Save 15% ▸




VITAMINS & SUPPLEMENTS | SPORTS NUTRITION | PROTEIN | DIET | CLEANSING & DIGESTION | SUPER FOODS & GREENS | HERBS | ENERGY & ENDURANCE | HEALTHY FOODS & SNACKS | BATH & BODY | EQUIPMENT & ACCESSORIES

▸About GNC
– Media Center
– Press Releases
– Company Overview
– News Alerts
– Franchising Information: Start Your Own GNC
– Investor Relations
– Vendor Relations
– Community Affairs/Charitable Events
– Careers
– Store Locator
– The Live Well Poll
– GNC Medical Advisory Board

Search MediaRoom  

## Company Overview

GNC: Quality you can trust | The shopping experience | Company history: Our roots were firmly planted in good health

GNC, headquartered in Pittsburgh, Pa., is the largest global specialty retailer of nutritional products; including vitamin, mineral, herbal and other specialty supplements and sports nutrition, diet and energy products. GNC has more than 4,800 retail locations throughout the United States (including more than 1,000 franchise and 1,200 Rite Aid store-within-a-store locations) and franchise operations in 48 international markets. The company – which is dedicated to helping consumers Live Well – also offers products and product information at www.gnc.com.



**Key Contacts**

GNC Corporation

412-288-4600

more >

**Latest Features**

GNC Introduces Clinically Tested ViraBLOC®
Oct 06, 2009

 Subscribe to News Alerts

EmailPrint


1-877-GNC-4700 | Contact GNC | Terms & Conditions | Privacy Statement | About GNC | Careers | Investor Relations | Affiliates

©1997-2007 General Nutrition Centers, Inc.

